### Ex parte LIANG BUCK CHEW.

(District Court, D. Massachusetts. June 12, 1923.)

No. 2260.

**1. Aliens ⊜⟹54—Medical certificate not conclusive.**

In view of provision of Immigration Act Feb. 5, 1917, § 16 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼i), that the medical officer shall certify for the "information" of immigration officers and boards of special inquiry any disease observed in an alien, section 17, providing that the decision of a board of special inquiry shall be based on the certificate, and shall be final as to rejection for dangerous contagious disease, does not make the medical certificate conclusive, and such certificate may be shown by the alien affected to be wholly unsupported by any evidence.

**2. Aliens ⊜⟹54—Health officers' certificate that clonorchiasis is a dangerous contagious disease not unreasonable; "contagious;" "communicable."**

As Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), excluding aliens affected with a "dangerous contagious disease," was passed for the protection of the public health, it should receive a liberal interpretation in aid of its obvious purpose, though the regulation of the Public Health Service, under section 16 (section 4289¼i), declaring the word "contagious'" synonymous with "communicable," cannot go beyond the statute, certificate of the health officers that an alien, afflicted with clonorchiasis, which requires two intermediate "hosts" to be communicable, was afflicted with a dangerous contagious disease *held* not unreasonable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contagious Disease.]

Habeas Corpus. Petition to secure the release of Liang Buck Chew. Petition dismissed.

Matthew L. McGrath, of Boston, Mass., for petitioner.
The U. S. Attorney, for defendant.

MORTON, District Judge. Habeas corpus to the Commissioner of Immigration to secure the release óf a Chinaman who is held for deportation. The facts are not in dispute and are as follows:

Chew, after having resided several years in this country, went back to China for a visit. On his return when he was examined by the health officials of the Immigration Service he was found to be afflicted with clonorchiasis or fluke worm of the liver. The Health Officers thereupon certified that the applicant was suffering from a "dangerous contagious disease." The board of special inquiry, considering that it was bound by this certificate, made an order on that ground alone excluding the applicant. He was held for deportation under this order when the present proceeding was instituted.

[1] The government contends in the first place that the medical certificate is conclusive upon all parties in interest, and that no inquiry is open as to whether it was correct or incorrect, reasonable or unreasonable. The provisions of the statute (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u) on this point are as follows: Section 3 (section 4289¼b) excludes aliens "afflicted with tuberculosis in any form or with a loathsome or dangerous contagious disease." Section

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

16 (section 4289¼i) provides for the physical examination of arriving aliens by medical officers of the Public Health Service, who are required to have had certain professional qualifications, and who "shall certify, for the *information* [italics mine] of the immigration officers and the boards of special inquiry hereinafter provided for, any and all physical and mental defects or diseases observed by said medical officers in any such alien." Section 17 (section 4289¼ii), dealing with hearings before boards of special inquiry, provides "that the decision of a board of special inquiry shall be based upon the certificate of the examining medical officer and, except as provided in section twenty-one hereof, shall be final as to the rejection of aliens affected with tuberculosis in any form or with a loathsome or dangerous contagious disease." Section 21 (section 4289¼kk) is not applicable to the present proceedings.

It is going a long way to say that the action of the medical officer is absolutely final, however capricious, unfounded, and unreasonable it may be. If that had been the intention of the act, it would, I think, have been stated in explicit terms, but there is no such language. The status of the certificate appears to be established by section 16; it is made "for the *information* of the immigration officers and the boards of special inquiry." The proviso of section 17 appears to mean that rejection because of disease shall not be made by a board of special inquiry unless such disease is certified by a health officer, and to be in the nature of a limitation on the powers of the boards of special inquiry. It therefore seems to me that the certificates of a health officer made under this act stand on the same footing as final decisions of other immigration tribunals, and that it is open to the petitioner to show that the certificate was wholly unwarranted upon any reasonable view of the applicant's condition; in other words, was unsupported by any evidence. The testimony in regard to the condition of the applicant and the nature of clonorchiasis, which was received at the hearing subject to be ruled upon later, is therefore admitted.

[2] The eminent medical gentlemen who testified for the petitioner and the government are in substantial agreement as to the nature of clonorchiasis and the method in which it is transmitted. The characteristic of the disease is a flat worm from one-half to three-quarters of an inch long (sometimes called "fluke worm") which infects the bile ducts of the liver. I infer, although the evidence upon the point is not entirely clear, that it is capable of causing death, and that the disease from that point of view may be regarded as "dangerous." The disease is distinctly Asiatic, being found principally in Japan, China, and Formosa. It has been recognized for over 40 years, and no case has been known to originate in this country.

The method by which the disease is transmitted from one person to another is extremely curious. The worms themselves do not leave the liver, and never pass from one person to another. They lay eggs, which are carried by the bile into the intestines, and leave the body with the fæces. These eggs are incapable of causing the disease in man. Their activity is set in motion only by lodging upon or being eaten by certain varieties of fresh-water snails. With the snail as a "host," the egg hatches into a parasite. This parasite will not cause the disease in man or other animals, and is not dangerous to them. The para-

site at a certain point in its development abandons the snail and enters the body of certain kinds of fresh-water fish, or it is eaten by the fish with the snail. In the body of the fish the parasite undergoes another change, and reaches a stage in which it becomes capable of causing the disease in man.

The disease is contracted by human beings, usually and perhaps always, by eating raw or nearly raw fish infested with the parasite. It is the opinion of Dr. Stiles of the Public Health Service that the necessary "hosts," both snail and fish, are to be found in the waters of this country, although that fact has not as yet been completely demonstrated, and I accept his opinion upon this point; it is certainly not unreasonable.

The public health authorities agree that there is no danger of one person acquiring this disease from contact or association with another. The alien here in question has lived, eaten, and slept with the other aliens in detention at the Immigration Station, where immigration officials are in charge. As the foregoing description of the disease shows, clonorchiasis is not directly transmissible from man to man; the parasite which causes it has to pass through two intermediate hosts before becoming capable of infecting another person. In this respect the disease resembles malaria and yellow fever, except that in them there is only one intermediate "host," a mosquito.

The final question is whether such a disease comes within the description "contagious," as used in the statute. The regulations of the Public Health Service, made under section 16 of the act, declare that the word "contagious" is to be regarded as synonymous with "communicable," and under the sixty-sixth regulation clonorchiasis is included as a dangerous contagious disease. The words "contagious" and "communicable," in their ordinary meanings, are not synonymous either in scientific usage or common speech. "There is doubtless a technical distinction between the two in the fact that a contagious disease is communicable by contact, or by bodily exhalation, while an infectious disease presupposes a cause acting by hidden influences, like the miasma of prison ships or marshes, etc., or through the pollution of water or the atmosphere, or from the various ejections from animals. The word 'contagious,' however, is often used in a similar sense of pestilential or poisonous, and is not strictly confined to influences emanating directly from the body." Brown, J., Grayson v. Lynch, 163 U. S. 468, 477, 16 Sup. Ct. 1064, 1068 (41 L. Ed. 230). See, also, to the same effect, Council v. St. L. & S. F. R. R., 123 Mo. App. 432, 100 S. W. 57, 61.

Is the word "contagious" used in this act in its ordinary meaning, or in the broad and loose sense referred to in the last sentence of the quotation? The statute in question, having been passed for the protection of the public health, should receive a liberal interpretation in aid of its obvious purpose. The underlying intention of it is to establish safeguards against the introduction into this country by alien immigrants of dangerous diseases, which might spread and do harm here. Certain diseases of which this would be true—e. g., yellow fever—are not contagious in the strict sense of the word. But they must be with-

in the intended scope of the act. The regulation making "contagious" equivalent to "communicable" seems pretty broad; but, assuming that the regulation be given a reasonable construction, I am not prepared to say that it is invalid. However phrased, the regulation cannot go beyond the statute.

Even under this interpretation of the act, there remains a good deal of doubt whether clonorchiasis can reasonably be found to be a dangerous contagious disease in this country. In ·view of its history and nature there seems little likelihood of its ever becoming a menace here. It may be that the health officers are over cautious about it; but it seems to me to be going too far to say that they are unreasonable.

Petition dismissed.