UNITED STATES ex rel. JOHNSON v. WATKINS.

No. 67, Docket 21095.

United States Court of Appeals Second Circuit.

Nov. 29, 1948.

CLARK, Circuit Judge, dissenting.

Gunther Jacobson, of New York City, for relator May Johnson.

John F. X. McGohey, U. S. Atty., of New York City, (William J. Sexton, Asst. U. S. Atty., and Alvin Lieberman, Atty., Immigration & Naturalization Service, United States Department of Justice, both of New York City, of counsel), for respondent.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The relator, a native and citizen of Sweden, arrived at the Port of New York on March 1, 1948, and applied for admission into the United States as a quota immigrant. Upon arrival she was examined by medical officers [hereinafter referred to as examining surgeons] of the United States Public Health Service who found her to be mentally defective, and made a certificate to that effect.

On March 16, 1948, she was accorded a hearing before a Board of Special Inquiry upon her application for admission at which hearing the above mentioned certificate was received in evidence. This hearing was suspended to permit the relator to appeal from the certificate issued by the examining surgeons to a board of medical officers of the United States Public Health Service convened by the Surgeon General.

On March 26, 1948, the medical board, after considering all the evidence including the certificate and the testimony given by one Dr. Carlton Simon, a psychiatrist chosen by the relator pursuant to Section 16 of the Immigration Act of 1917, 8 U.S.C.A. § 152, to appear as her expert medical witness before the board, reported that it concurred with the examining surgeons' certificate.

The hearing before the Board of Special Inquiry was resumed on April 6, 1948, at the conclusion of which that board, after introducing into the record the report of the medical board, made the following findings of fact and conclusion of law (the word "you" as used in the findings and conclusion referring to relator):

"Findings of Fact:

"1. that you are an alien, a native and citizen of Sweden;

"2. that you last arrived in the United States at the port of New York on March 1, 1948 on the SS Stockholm;

"3. that you are an applicant for admission to the United States for permanent residence;

"4. that you are in possession of valid Swedish passport;

"5. that you are in possession of an unexpired quota immigration visa;

"6. that there has issued in your case medical certificate certifying you to be 'Mental Defective, Class A' which certificate has been affirmed by a board of medical officers pursuant to your appeal to such a board.

"Conclusions of Law: That you are inadmissible to the United States under Section 3 of the Immigration Act of February 5, 1917 [8 U.S.C.A. § 136] in that you have been certified by surgeons of the U. S. Public Health Service to be mentally defective, Class A."

It is argued on behalf of the relator that the Board of Special Inquiry made no independent decision as to whether she was mentally defective but merely followed the conclusions of the certificate of the

medical board of the Public Health Service to which the relator had taken an appeal pursuant to Section 16 of the Immigration Act of 1917, 8 U.S.C.A. § 152. We think that the conclusion of the medical board was binding on the Board of Special Inquiry within the meaning of Section 17 of the Act of 1917, 8 U.S.C.A. § 153. That section provided that: "The decision of a board of special inquiry shall be based upon the certificate of the examining medical officer and * * * shall be final as to the rejection of aliens affected * * * with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section 3 of this act."

The relator insists that the Board of Special Inquiry was not bound by the opinion of the medical board and in reaching its decision should not have rejected evidence offered to show that she was sane. Reliance is placed on decisions of Judge Morton in the District Court of Massachusetts to support the contention that the medical certificate was not final in respect to the relator's mental state and to the decision of the Court of Appeals of the First Circuit to the same effect. Billings v. Sitner, 1 Cir., 228 F. 315; Ex parte Joyce, D. C. Mass., 212 F. 282, 285. These decisions were made under the Immigration Act of 1907, 34 Stat. 898. Section 10 of that act provided that the decision of the Board of Special Inquiry "based upon the certificate of the examining medical officer, shall be final". Judge Dodge writing for the Court of Appeals in Bill-

ings v. Sitner, 1 Cir., 228 F. 315, 316, said: " * * * Although immigration rule 17, subdivisions 4, 5 (note), state that the board is 'virtually compelled' to base its decision upon the certificate, we hold that it has no right to do so without exercising its own judgment, after considering not only the certificate, but whatever other evidence there may be touching the alien's right to enter. The District Court had previously so held in another case. In re Joyce, [D. C.], 212 F. 282, 285."

It is to be noted that Section 17 of the Immigration Act of 1917 substituted for the words of Section 10 of the Act of 1907, which appear in the margin,[1] the following: "That the decision of a board of special inquiry shall be based upon the certificate of the examining medical officer and * * * shall be final as to the rejection of aliens affected * * * with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section 3 of this act."[2]

The Report of the Senate Committee made at the time of the enactment of Section 17 of the Act of 1917, as published in Sen.Rep. 352, 64th Cong., was as follows: " * * * Section 10 of the Act of 1907 making the certificate of the examining medical officer and the decision of a board of special inquiry based thereon conclusive and final in certain cases of disease and mental defect has been added to this section as a proviso * * * but the said provision has been slightly changed so as to clarify its meaning and meet recent

---

[1] "That the decision of the board of special inquiry * * * based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens affected * * * with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section two of this Act."

The pertinent provisions of Section 2 of the Act of 1907 are as follows: "That the following classes of aliens shall be excluded from admission into the United States: All idiots, imbeciles, feeble-minded persons, epileptics, insane persons, and persons who have been insane within five years previous; persons who

have had two or more attacks of insanity at any time previously; paupers; persons likely to become a public charge; professional beggars; persons afflicted with tuberculosis or with a loathsome or dangerous contagious disease; persons not comprehended within any of the foregoing excluded classes who are found to be and are certified by the examining surgeon as being mentally or physically defective, such mental or physical defect being of a nature which may affect the ability of such alien to earn a living; * * *."

[2] Section 3 of the Act of 1917 contains language substantially identical to that of Section 2 of the Act of 1907.

court decisions tending to modify the principle, upon which provisions of this kind in the immigration law have heretofore been based, that. on medical questions the opinions of doctors as against that of laymen should prevail. Of course practical questions should be determined by the immigration officials, but questions of purely medical nature must be determined by members of the medical profession."

It seems clear that. the "recent court decisions" referred to in the above Senate Report were those of the federal courts of the First Circuit. No others existed which have been called to our attention. The Report plainly indicates the Senate Committee's view that these decisions did not properly construe Section 10 of the Act of 1907. In such a setting, the words of Section 17 that "the decision of a board of special inquiry shall be based upon the certificate of the examining medical officer" inevitably indicate that the Board must adopt the findings of the certificate on such medical questions as are here involved. What else can be meant by the words: "on medical questions the opinions of doctors as against that of laymen should prevail." A certificate by the medical board if its action conformed to the statute and regulations and its decision was made after a fair hearing was plainly intended to be conclusive.

In Ex parte Liang Buck Chew, D. C. Mass. 1923, 296 F. 182, Judge Morton dealt with the finality of a medical certificate under the provisions of the Act of 1917. He in effect adhered to the decisions in the First Circuit interpreting the Act of 1907, but made no mention of the Senate Report which probably had not been called to his attention and rested his decision that the medical certificate was not final largely upon language in Section 16 of the 1917 Act that the certificate was "for the information of * * * the boards of special inquiry." Undoubtedly, it was for the information of the latter, who under no circumstances could act without having it before them. That the Board of Special Inquiry was not bound to base its decision, so far as it involved medical facts, upon the certificate does not follow from the terms of the Act of 1917 and seems directly contrary to the Senate Report and its expressed purpose. In this connection, we must remember that the language of the Act of 1917 so heavily relied on by Judge Morton is also to be found in Section 17 of the Act of 1907, so that his reasoning fails to answer the clear implications of the Senate Report.

The views we have expressed as to the effect of a certificate by the medical board are in accord with the decision of this court in United States ex rel. Fink v. Tod, 1 F.2d 246, 253. The primary question in that case was whether the Secretary of Labor could reopen hearings which had been held by the medical board. We decided that he could not, saying in that connection: " *. * * The statute declares that the board of special inquiry shall base their decision upon the medical certificate. We can only interpret this to mean that the medical certificate is conclusive as to the physical and mental condition of the alien examined. And we do not think it was intended that the board of special inquiry constituted of nonmedical men should have the right to sit in review upon decisions of medical questions rendered by a board of medical officers or by a medical inspector. If such was not the intention, why require that the decision of the board of special inquiry 'shall be based upon the certificate of the examining medical officer'?"

This court finally said in denying an application for reargument that a Board of Special Inquiry could, on such grounds as fraud or newly discovered evidence, order the medical board to reopen hearings, but that the Secretary of Labor could not. We plainly held that in the absence of such a reopening at the behest of the board, the medical certificate was to be regarded as conclusive. The contention that our former decision no longer represents the law because it was reversed by the Supreme Court on confession of error, 267 U.S. 571, 45 S.Ct. 227, 69 L.Ed. 793, is without merit. We have no reason to regard a reversal on confession of error as indicating any decision on the merits by the appellate court. We cannot know what considerations moved the government

to confess error in a case which had been pending for two and a half years and in which the medical experts had widely differed.

The Court of Appeals of the Ninth Circuit in Gee Shew Hong v. Nagle, 18 F.2d 248, is said to have reached a decision contrary to that in the Tod case respecting the conclusiveness of a medical certificate. While certain language in the opinion warrants this contention, we think the decision necessarily involved only the right of the Board of Special Inquiry to reopen the proceedings before the medical board. In the case at bar, no reopening was attempted so that we do not have before us the critical question facing the Ninth Circuit regarding the right of the Board of Special Inquiry to reopen, as to which the opinion cannot be said to have differed with our decision in United States ex rel. Fink v. Tod, supra.

In United States ex rel. Frumcair v. Reimer, D.C.S.D.N.Y., 25 F. Supp. 552, Judge Patterson decided that the language of Sections 16 and 17 of the Immigration Act of 1917 rendered the medical certificate conclusive and precluded the Board of Special Inquiry from hearing additional testimony calculated to overthrow the certificate. We are in accord with the reasoning and decision of Judge Patterson.

The contention that the Board of Special Inquiry was not properly constituted under Section 11 of the Administrative Procedure Act, 5 U.S.C.A. § 1010, is fully met by Section 7 of that Act, 5 U.S.C.A. § 1006, and was properly disposed of by Judge Rifkind in the court below.

The contention that the medical board did not allow a fair hearing because it gave undue weight to a medical report by a Swedish doctor who treated and observed the alien during her voyage to the United States is without substance. Such evidence, though hearsay, was properly incorporated in the record and considered by the medical board. The alien was given an opportunity to correct it by the examination conducted by the medical board and by the testimony of her own expert medical witness before the appeal board in accordance with the provisions of Section 16 of the statute. Moreover, the report of the Swedish doctor had confirmation in the alien's own admission that she had told him that she had hallucinations. She only explained this admission by saying "I say yes to everything and he took the pulse and I was hysteric." It was for the medical board to determine the weight to be given her explanation in the light of all the surrounding facts.

For the foregoing reasons, the order dismissing the writ of habeas corpus is affirmed.

CLARK, Circuit Judge (dissenting).

I agree with the propositions of law stated in the opinion, but am troubled by another matter not there discussed, namely, the stark and unadorned form of medical certificate, i. e., that relator "has this day been examined and is found to be afflicted with—

MENTAL DEFECTIVE

Class 'A,' "

followed by the signatures of two surgeons. The Immigration Act of 1917, 8 U.S.C.A. § 136(d), provides for the exclusion of persons "who are found to be and are certified by the examining surgeon as being mentally or physically defective," thus in respondent's own words providing that "the examining surgeons were to do both the finding and the certifying." Nothing in the record tells us what a Class "A" Mental Defective is or how much the classification adds to the damning phrase. But search and the help of counsel show that the phrase goes back to the Regulations of the Surgeon General for the Medical Examination of Aliens, the applicable provisions being those of September 15, 1947, as approved by the Federal Security Administrator pursuant to 8 U.S.C.A. § 152, 42 U.S.C.A. §§ 249(c), 252, and set forth in 42 C.F.R., 1947 Supp., 34.1–34.13. These seem, at first blush at least, clear and admirable; they seem just as clearly not complied with here. Sec. 34.7 shows that there are three classes, with four types of diseases and defects in Class A, including tuberculosis, a loathsome or dangerous contagious disease, a series of defects, including idiocy, imbecility, chronic alcoholism, and

four other types of like diseases, and finally a catchall group of mental defects not enumerated in the previous paragraph and not showing mental shortcomings due to ignorance, etc. This is a variegated list, among which the relator is left to guess as to her particular affliction. If we consider the certificate to refer to the last two paragraphs only, that still leaves some eight types of affliction.

But this vagueness seems directly contrary to the requirements of the regulations, which in § 34.2(c) defines a certificate as a document issued by an examining medical officer to the Immigration Service, "signed by him and certifying his findings with respect to an alien's physical and mental condition." That real, and not formal, findings are meant is shown by the detailed provisions for re-examination by a specially convened board upon the alien's appeal, § 34.13, leading to findings and conclusions on its part, viz.,

"(g) The findings and conclusions of the board shall be based on its medical examination of the alien and on the evidence presented to it and made a part of the record of its proceedings.

"(h) The board shall report its findings and conclusions to the Immigration Service, and shall also give prompt notice thereof to the alien if the re-examination has been held upon his appeal. The board's report to the Immigration Service shall specifically affirm, modify, or reject the findings and conclusions of prior examining medical officers."

Not only was the original certificate therefore defectively general, but there was no compliance with the provisions last quoted, and particularly the last sentence of (h). The statement of the Board of Medical Officers was merely that it had considered the appeal and, "after taking into consideration the certificate of Mar. 11, 1948 and the testimony given by Dr. Carlton Simon, reports that it concurs with the above dated certificate."

While I agree that the ideas of laymen should not control the views of medical experts upon this medical question, yet it does seem that under the statute the Board of Special Inquiry does have some function in the premises, namely, to see that there is an adequate and revealing certificate, just as the Surgeon General has required. Thus it certainly should reject one which is self-contradictory, and the court must sustain the writ of habeas corpus if it does not, as was held in Hughes v. United States ex rel. Licata, 3 Cir., 295 F. 800, 802, affirming D.C.E.D.Pa., 289 F. 808. As Judge Learned Hand has said: "It is indeed another matter whether the certificate should not itself state the evidence upon which the conclusion is based, and what efforts have been made to ascertain the facts between entry and arrest. Certainly that is desirable." United States ex rel. Powlowec v. Day, 2 Cir., 33 F.2d 267, 268, certiorari denied 280 U.S. 594, 50 S.Ct. 40, 74 L.Ed. 641. See also United States ex rel. Papa v. Day, D.C.S.D.N.Y., 45 F.2d 435; and compare United States ex rel. v. Devenuto v. Curran, 2 Cir., 299 F. 206, 213. United States ex rel. Fong On v. Day, 2 Cir., 54 F.2d 990, 991, 992, which finds no error in the admission in evidence before a board of a certificate as to age based upon observation, where the relator had not availed himself of his privilege of calling the surgeon to testify, concerns so different a situation as to point the moral here. There was no question of according it conclusive effect. Even as evidence Judge Swan criticized it, saying, "Such a certificate is competent evidence, although it would carry more weight if it contained a statement of the nature of the surgeon's examination of the applicant and the grounds upon which he based his conclusion."

These general reactions of eminent judges are now given specific point by the Surgeon General's detailed regulations. Had the prescribed practice been followed here, we would not have been faced with this quite anomalous record where actual decision lurks behind the vaguest of medico-legal generalities and the precise and detailed evidence of the relator's expert does point to a result unjustifiably harsh. I would reverse the order and direct that the writ be sustained because of inadequacy of the original certificate of the examining surgeons and total failure of the reviewing Board of Medical Officers to comply with the regulations.