GENERAL TRANSP. CO. et al. v.
UNITED STATES et al.

Civil Action No. 3683.

District Court, D. Massachusetts.

March 29, 1946.

James J. Weinstein, of Boston, Mass., for plaintiffs.

Edward Dumbauld, Sp. Asst. to Atty. Gen., for the United States.

Edmond J. Brandon, U. S. Atty., of Boston, Mass., and Daniel H. Kunkel, of Washington, D. C. (David K. Knowlton, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Before WOODBURY, Circuit Judge, and SWEENEY and HEALEY, District Judges.

WOODBURY, Circuit Judge.

This is a suit brought under § 24 of the Judicial Code, 28 U.S.C.A. § 41(28), to en-

join, set aside and annul an order of the Interstate Commerce Commission approving the purchase of the operating rights of Clarence L. Hardy of Boston, Mass., by Beacon Fast Freight Co., Inc., of New York, N. Y. The standing of the plaintiffs to sue under the rule of Alton Railroad Co. v. United States, 315 U.S. 15, 19, 62 S.Ct. 432, 86 L.Ed. 586, is conceded. The jurisdiction of this court in the premises is unquestioned and unquestionable.

The facts necessary for a decision of the issues presented are not in dispute and may be found as follows:

Beacon Fast Freight Company, Inc., is a common carrier by motor vehicle of general commodities, with the usual exceptions, operating over a regular route between Cambridge, Mass., and Jersey City, N. J., under a certificate of convenience and necessity issued to it under the "grandfather" clause on October 15, 1943. It serves Boston and New York as intermediate points.

Clarence L. Hardy, on May 1, 1941, was issued a certificate, also under the "grandfather" clause, authorizing him to operate in interstate or foreign commerce as a common carrier by motor vehicle of general commodities, with the usual exceptions, over irregular routes between Boston on the one hand and all points and places in Massachusetts on the other. His principal business in former years consisted in the transportation of property in truck load lots from the docks in Boston to various interior Massachusetts points. He seldom was offered return loads to Boston and he had no interchange arrangements with other carriers. After the outbreak of the European war the movement of import traffic largely ceased and when this country entered the war ocean borne traffic from the Pacific coast also ceased. However, Hardy continued some operations until the Office of Defense Transportation issued a general order on July 13, 1942, relating, among other things, to the performance of transportation service by motor truck solely in one way loadings, and then, finding it difficult to comply with that order, he ceased all operations. This occurred on or about August 15, 1942. From that date until about

December 15, Hardy leased his equipment to a private contractor, but he continued to pay rental on a terminal at Malden, Mass. until March 1943, by which time he had sold all his motor vehicles. In May 1943, he applied to the Commission for authority to suspend operations for the duration of the war, but his request was denied. As of the date of the Commission's hearing, February 7, 1944, he had cargo and liability insurance in effect, and tariffs on file with the Commission. Since June 1943 he has been employed by the United States Government.

On January 31, 1944, Beacon and Hardy entered into an agreement for the sale of the latter's operating rights to the former for $1800 payable upon approval of the transaction by the Commission.[1] Thereupon Beacon and Hardy filed a joint application with the Commission for such approval under § 5(2) (a) (i) of Part I of the Interstate Commerce Act, 49 U.S.C.A. § 5(2) (a) (i), and in the proceedings before the Commission on that application the present plaintiffs appeared as party protestants. They confined themselves, however, to the cross-examination of witnesses and to argument. Before it their contentions, as found by the Commission were: "(1) that vendor wilfully abandoned his operations and that therefore his certificate is voidable and not the fit subject of sale under section 5; and (2) that, in any event, it would not be consistent with the public interest to authorize purchase by vendee, a regular-route operator, of irregular-route operating rights which clearly were not used by vendor in the performance of a through service in the manner proposed by the vendee."

The Commission, however, on November 1, 1944, ruling in accordance with its decision in Quaker City Bus Co.-Purchase-Blackhawk Line, Inc., 38 M.C.C. 603, 606, that "Possession of a certificate, in and of itself, and without performance of any transportation, constitutes the holder thereof 'a motor carrier subject to Part II'" and finding that the proposed purchase would be consistent with the public interest and would not "materially affect the present competitive situation or injure protestants in such a way as to threaten continu-

[1] Beacon's object in making this purchase is to obtain access to the area northeast of Boston known as the North Shore.

ance of their operations or impair their ability to perform their common carrier obligations to the shipping public," approved the purchase subject to usual conditions.

Thereupon the protestants as plaintiffs brought the instant suit in which they make three points. They say (1) that the Commission had no jurisdiction under § 5(2) (a) (i) to approve Beacon's application to purchase Hardy's certificate of public convenience and necessity for the reason that the latter had voluntarily ceased all operations under his certificate and therefore was no longer a "carrier" within the meaning of Part II of the Act; (2) that the Commission erred in approving the application for the reason that Hardy did not possess any "transferable right" to operate in interstate commerce because his operations brought him within the second proviso of § 206(a) of the Act, 49 U.S.C.A. § 306 (a); [2] and (3) that the proposed transaction of purchase and sale, if consummated, would be inconsistent with the public interest.

Only the plaintiffs' first point merits extended consideration.

■ Their second point was not made before the Commission but is made for the first time here. Therefore, upon the authority of United States v. Hancock Truck Lines, 324 U.S. 774, 779, 780, 65 S.Ct. 1003, 89 L.Ed. 1357, we rule that it is not properly before us for consideration. To be sure the plaintiffs here, when appearing as protestants before the Commission, did not expressly waive the point they now make, and in this respect the case at bar differs from the Hancock case. Nevertheless the reasoning of that case is applicable, and furthermore, although strictly speaking we are not an appellate court, we in reality are called upon to exercise appellate functions, and from this we think it follows that we should apply general principles applicable on review.

■ Their third point raises a question for determination by the Commission in the exercise of its expert administrative discretion. McLean Trucking Co. v. United States, 321 U.S. 67, 87, 88, 64 S.Ct. 370, 88 L.Ed. 544 and cases cited.

■ Since it does not appear that the Commission overstepped any limit expressly placed by Congress upon its discretion, and since its conclusion has ample support in the evidence—in fact the plaintiffs' argument on this point, upon analysis, is only that the Commission erroneously weighed conflicting evidence—we see nothing to warrant further consideration of this point.

■ The plaintiffs' argument in support of their first point runs as follows: They say that § 5(2) (a) (i) supra makes it lawful "for any carrier * * * to purchase, * * * the properties, or any part thereof, of another" only "with the approval and authorization of the Commission"; that § 5(13) of the Act defines the term "carrier" as used in § 5, paragraphs (2) to (12), inclusive, to include "a motor carrier subject to chapter 8 of this title" (chapter 8 is Part II of the Interstate Commerce Act) and that in Part II § 203(a) (14), 49 U.S.C.A. § 303 (a) (14), the term "common carrier by motor vehicle" is defined to mean "any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of * * * property * * * for compensation." Then they say that to be a "carrier" within § 5(2) (a) (i), that is, one whose transactions of purchase of another carrier's property to be legal must be approved by the Commission, one must be actually conducting operations of carriage, since other-

[2] "And provided further, That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this chapter." It appears that there is such a board in Massachusetts and that Hardy had obtained an appropriate certificate from it.

wise there is no holding out to the public to engage in transportation, and so by definition the Commission's jurisdiction fails.

This argument has logic so far as it goes, but other statutory provisions prevent its adoption.

The so-called "grandfather" clause of § 206(a) of the Motor Carrier Act, 49 U.S.C.A. § 306(a), requires that there shall be continuity of operation following the critical date of June 1, 1935, to entitle a carrier as a matter of right to a certificate of public convenience and necessity, (see Gregg Cartage & Storage Co. v. United States, 316 U.S. 74, 62 S.Ct. 932, 86 L.Ed. 1283), but this section is not to be confused with the one under consideration here. It has no bearing on the life span of such a certificate once it has been issued. That matter is covered by § 212(a) of Part II of the Act, 49 U.S.C.A. § 312(a), which provides that certificates from their effective date "shall remain in effect until suspended or terminated as herein provided," and that termination, except upon application of the holder, must be by the Commission, either upon complaint or on its own initiative, after notice and hearing. This explicit provision seems to us to more than counter-balance the inferences drawn by the plaintiffs from the definitions used in the Act, and fully to warrant the Commission's interpretation of the Act in Quaker City Bus Co.-Purchase-Blackhawk Line, Inc., 38 M.C.C. 603, in which it said (p. 606): "The mere fact of an interruption in operations does not automatically revoke a certificate. To accomplish a revocation of a certificate the provisions of section 212(a) must be satisfied." "Until that certificate is revoked in accordance with the procedure prescribed in § 212(a), it remains in full force and effect." "Possession of a certificate, in and of itself, and without performance of any transportation, constitutes the holder thereof 'a motor carrier subject to Part II.'" See also Smith Bros. John C. Sandidge Receiver, 33 M.C.C. 465, a proceeding for the revocation of a certificate, in which the Commission (p. 473) said "that the complete cessation of operations by respondents did not automatically and without further proceedings on our part cause a termination of their certificate. * * *"

We concede that cessation of service by a carrier may, under appropriate circumstances, warrant revocation of a certificate by the Commission. And it may be that what Hardy did, or failed to do, was enough to warrant such action by the Commission. However, no complaint, so far as appears, was ever made to the Commission and it took no action on its own initiative, so that question is not before us. For present purposes it is enough that no action was ever taken by the Commission to revoke Hardy's certificate.

The provisions of § 212(a) so clearly indicate that it was the intent of Congress that once a certificate of public convenience and necessity issued it should not be revoked, except possibly by actual abandonment, without action by the Commission after notice and hearing, that it would serve no useful purpose to consider the plaintiffs' arguments separately and in detail, or to labor the point further.

The plaintiffs' complaint is dismissed.