UNITED STATES ex rel. JOHNSON *v.* SHAUGHNESSY, ACTING DISTRICT DIRECTOR OF IMMIGRATION AND NATURALIZATION.

No. 506.   Argued April 19–20, 1949.—Decided May 9, 1949.

*Gunther Jacobson* argued the cause and filed a brief for petitioner.

*Patricia H. Collins* argued the cause for respondent. With her on the brief were *Solicitor General Perlman, Assistant Attorney General Campbell, Robert S. Erdahl* and *Philip R. Monahan.*

*Jack Wasserman, Gaspare Cusumano* and *Thomas M. Cooley, II,* filed a brief for the Association of Immigration and Nationality Lawyers, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The American Foreign Service at Stockholm issued to petitioner an immigration visa to come to the United

States as a Swedish quota immigrant. On the ground that she was a mental defective, authorities of the Immigration and Naturalization Service declined to admit her into this country and ordered her detention at Ellis Island pending deportation to Sweden. She filed this habeas corpus proceeding contending that she was not a mental defective and challenging in several respects the legality of the exclusion order. The District Court discharged the writ and ordered petitioner remanded to the immigration authorities. 82 F. Supp. 36. The Court of Appeals affirmed, one judge dissenting. 170 F. 2d 1009. Certiorari was granted because important questions were raised concerning administration of the immigration laws.

Section 3 of the Immigration Act of 1917 excludes from admission into this country certain classes of aliens deemed undesirable. Among those excluded are persons "who are found to be and are certified by the examining surgeon as being mentally . . . defective . . . ." 39 Stat. 874, 875, 8 U. S. C. § 136 (d). Section 16 of the Act [1] provides that mental examinations of arriving aliens shall be made by not less than two United States Public Health Service medical officers especially trained in the diagnosis of insanity and mental defects. The same section authorizes an appeal to a special board of medical officers of the Public Health Service for any alien who is certified by the two medical officers as a mental defective. Finally § 17 of the Act as amended, 8 U. S. C. § 153, provides that boards of special inquiry shall be appointed by the Immigration and Naturalization Service, subject to approval of the Attorney General. These boards of special inquiry are granted "authority to determine whether an alien who has been duly held shall be allowed to land or shall be deported." It was a board of special inquiry of this kind that ordered petitioner excluded from the United States.

---

[1] 39 Stat. 885, as amended, 8 U. S. C. § 152.

*First.* Two medical officers of the Public Health Service signed a certificate that petitioner was a mental defective. On appeal a board of three Public Health medical officers affirmed the finding of this certificate. Later when her case was under consideration by a board of special inquiry of the Immigration and Naturalization Service, petitioner asked for time to produce additional evidence to show that she was not a mental defective. The board refused to hear such evidence holding that it was bound by § 17 of the Immigration Act to accept as final the medical certification that she was a mental defective. Petitioner contends that this holding was error which invalidates the exclusion order. We hold that the Court of Appeals correctly rejected this contention.

Section 17 provides, with an exception not here relevant, that "the decision of a board of special inquiry shall be based upon the certificate of the examining medical officer and . . . shall be final as to the rejection of aliens affected with . . . any mental . . . disability which would bring such aliens within any of the classes excluded from admission to the United States under section three of this Act." We agree with the following statement of the Court of Appeals. "A certificate by the medical board if its action conformed to the statute and regulations and its decision was made after a fair hearing was plainly intended to be conclusive." 170 F. 2d 1009, 1012. This conclusion is particularly compelling in the light of the legislative history referred to in that court's opinion. We therefore turn to the medical certificates to consider the contention that they were not issued as the result of the kind of examinations required by the statute and regulations, and that the certificates themselves failed to conform to those requirements.

*Second.* Petitioner attacks the validity of both the initial medical certificate and that of the appellate medical board, contending that they provide an inadequate basis for excluding her from the United States. The

importance of these medical certificates is underscored by our holding that Congress has made the findings and conclusions in the certificates final on the question of whether an alien is so mentally defective that admission into the country must be denied. Congress has taken note of the crucial importance of this medical determination by prescribing certain minimum procedural requirements that the Public Health Service must follow, such as special qualifications of examining doctors, the minimum number of doctors that must examine the applying alien, and the right of an alien to have an initial adverse certificate reviewed by a special board of doctors. In order that further safeguards might be provided, Congress authorized the Surgeon General of the Public Health Service to prescribe additional regulations governing the procedure to be observed in the exercise of that Service's exclusive authority over medical questions.

Pursuant to this statutory authority the Surgeon General issued regulations which detail the manner in which medical examinations shall be held and the type of certificates by which examining doctors and boards shall report their findings and conclusions. As shown by the dissenting opinion below, serious challenges have been made to the sufficiency of the certificate of the medical appeal board as well as to the initial medical certificate in which two doctors certified petitioner to be a mental defective.[2] The shortcomings of the initial certificate, however, probably could have been rendered harmless

---

[2] During the hearings before the Board of Special Inquiry counsel for petitioner stated to this board "that from an examination of the record it appears that the only positive finding of mental defectiveness appears in the record of the ship's surgeon . . . ." Counsel insisted that petitioner was suffering from no "mental disturbance whatsoever." In her behalf he asked for an opportunity to produce further medical testimony. In response to this request the board's chairman asked counsel whether petitioner would be able to bear the expenses of her continued detention should the board grant her

by a proper examination and certificate by the medical board of appellate review. Since our conclusion is that the appellate review failed to meet the requisite standards prescribed by statute and regulations, we need not consider the challenges directed against the original certificate standing alone.

Regulations of the Public Health Service provide the way in which medical appeal boards shall be convened and detail a procedure for the boards to follow. The regulations impose a duty on such boards "to re-examine an alien"; they further provide that "re-examination shall include . . . a medical examination by the board"; that the "findings and conclusions of the board shall be based on its medical examination of the alien"; and that "The board shall report its findings and conclusions to the Immigration Service . . . ." [3] The report of the medical appeal board here shows only that it "considered the

request for an opportunity to produce further medical testimony. Counsel replied that he believed she could. The board immediately thereafter closed the hearing, made its findings and ordered her excluded.

The dissenting opinion stated: "I would reverse the order and direct that the writ be sustained because of inadequacy of the original certificate of the examining surgeons and total failure of the reviewing Board of Medical Officers to comply with the regulations." 170 F. 2d 1009, 1014.

[3] "(c) Re-examination shall include:

"(1) A medical examination by the board;

"(2) A review of all records submitted;

"(3) Use of any laboratory or diagnostic methods or tests deemed advisable; and

"(4) Consideration of statements regarding the alien's physical or mental condition made by a reputable physician after his examination of the alien.

.    .    .    .    .

"(e) An alien being re-examined may introduce as witnesses before the board such physicians or medical experts as the board may in its discretion permit, at his own cost and expense, . . . ." 42 Code Fed. Reg. § 34.13 (1947 Supp.).

appeal . . . and after taking into consideration the certificate of Mar. 11, 1948 and the testimony given by Dr. Carlton Simon, reports that it concurs with the above dated certificate." The report of this medical board therefore wholly failed to show any compliance with the requirement of § 34.13 (g) that the board base its "findings and conclusions . . . on its medical examination of the alien . . . ." We think the record makes clear that the appeal board made no such medical examination as was required by the regulations.

The report itself shows that the appellate board based its conclusion on two considerations: (1) the initial certificate of the two public health doctors; (2) testimony given by Dr. Carlton Simon. But the appellate board could not rest its finding that petitioner was a mental defective on the original certificate without denying petitioner the independent review and re-examination which Congress and the Surgeon General had prescribed. Nor could the appellate board relieve itself of its duty to make an independent re-examination by relying on the testimony of Dr. Simon. Moreover, Dr. Simon testified that petitioner was not a mental defective. His testimony was that she was "normal." It hardly seems necessary to add that the statement of the appellate board that it had "considered the appeal," cannot be treated as a certification that petitioner had been given an independent medical examination. We therefore hold that the appellate board's certificate is an inadequate basis on which to rest the exclusion order of the board of special inquiry.

The Government contends, however, that additional data in the record shows that the board did re-examine the petitioner. We may assume without deciding that the defects in the appellate board's report could be cured by additional record data, but we find no such data in the record sufficient to cure the defect. The data on

which the Government relies is contained in a stenographic report of evidence given by petitioner and Dr. Simon, petitioner's witness. Petitioner's evidence, like that of Dr. Simon, was an emphatic denial of any condition which could justify her classification as a mental defective. The stenographic report thus falls far short of showing that the medical appeal board made an independent medical examination of petitioner's mental qualities. That report tends to confirm the fact that the board's conclusions were rested only on the report of the initial examination by the two Public Health Service doctors and on a report of the physician of the ship on which petitioner came to this country. This makes necessary a short statement concerning this report by the ship's doctor and the circumstances under which the record discloses that report was made.

Apparently the second day after petitioner had commenced her voyage to America the ship's doctor visited her. He found her weak and dizzy. She stated that "she could not stand the sea" and would not go to the dining room. The doctor's impression after his first visit was that she was seasick. The next day, according to the doctor's report, she admitted hallucinations, stating that at night she heard cries and saw faces, said she had given the consul "wrong information," and thought this sinful. At this time the ship's doctor wrote down his "impression of an incipient psychosis" and transferred her to the isolation ward of the ship's hospital. The next day according to the doctor, petitioner stated that she had been treated for insanity at her home in Sweden for a six-month period two years before. On the last day of the sea trip, the ship's doctor reported that she had cleared up "remarkably," that she had no recollection of "a lot of strange things she had said before," was sleeping well, denied having any hallucinations, and looked "considerably better."

In her evidence before the medical board petitioner stated that she spoke "terribly bad English"; that prior to boarding the ship she had been to a number of parties and was very tired when she came aboard; that after coming aboard and during the voyage she had taken bromides and sleeping tablets; and that in her condition she just slept and said "yes" to every question the doctor asked.

From the foregoing it appears that the data relied on by the Government was totally inadequate to show that the appellate medical board "re-examined" petitioner. The sum total of that data is testimony given by petitioner and her medical specialist to the effect that petitioner was mentally normal, plus petitioner's admissions that while seasick and under the influence of drugs she had said things that prompted the ship's doctor at one time to suspect "incipient psychosis."

So far as the medical findings and evidence here show, the daily reports made by the ship's doctor while petitioner was a passenger constitute the only affirmative evidence that petitioner is or was a mental defective. The Public Health regulations plainly prohibit the issuance of exclusion orders resting on nothing but a single episode reported by a non-Public-Health doctor. For Congress has provided that before aliens suspected of mental defects are excluded, findings and conclusions shall be made by Public Health doctors based on their own examinations made in compliance with procedural safeguards defined or authorized by Congress. Medical certificates barring aliens are even then to be issued "only if the presence of such . . . defect is clearly established." 42 Code Fed. Reg. § 34.4 (1947 Supp.). And such certificates "shall in no case be issued with respect to an alien having only mental shortcomings due to ignorance, or suffering only from a mental condition attributable to remedial physical causes, or from a psychosis of a

temporary nature caused by a toxin, drug, or disease."
42 Code Fed. Reg. § 34.7 (1947 Supp.). So far as appears
from the appellate certificate here, the board made no
examination to determine whether the ship episode, as
reported by the physician, was the result of petitioner's
ignorance of English plus temporary debility or was the
result of a mental defect justifying exclusion. Even the
report of the ship physician contained no finding on this
point, and it is not amiss to add that the verified petition
for habeas corpus contains an undenied allegation that
the ship's doctor has now stated that "in his opinion the
alien is not mentally defective."

Our holding that the appellate board's medical certifi-
cate and additional data are inadequate to support the
exclusion order makes it unnecessary to decide other ques-
tions relating to applicability of the Administrative Pro-
cedure Act to hearings before the board of special inquiry.
60 Stat. 237, 239, 5 U. S. C. §§ 1001, 1004.

The judgment is reversed and the cause is remanded
to the District Court for entry of an order affording peti-
tioner a proper hearing and medical examination before
the appropriate public health authorities.

*Reversed and remanded.*

Mr. Justice Reed, with whom The Chief Justice and
Mr. Justice Burton join, dissenting.

This Court affirms the decision that a proper medical
finding of a physical defect which excludes an alien from
entrance into the United States is final and not subject
to further inquiry. With the Court's ruling on this point,
I agree.

(1) The reversal of the dismissal of the writ of habeas
corpus is founded on the Court's premise that the report
of the reviewing board of medical officers "shows that
the appellate board based its conclusion on two consid-

erations: (1) the initial certificate of the two public health doctors; (2) testimony given by Dr. Carlton Simon [a psychiatrist chosen by the alien]." The Court then concludes that "the appellate board could not rest its finding that petitioner was a mental defective on the original certificate without denying petitioner the independent review and re-examination which Congress and the Surgeon General had prescribed." That is to say, the report, as the Court phrases it, "makes clear that the appeal board made no such medical examination as was required_by the regulations." [1] My reading of the opinion is that the Court thinks the record affirmatively shows a failure to comply with the statute and regulation § 34.13 (g) and (h) as to findings and examination.[2]

---

[1] The report reads as follows:

"Pursuant to the request of the District Director of Immigration and the order of the Medical Officer in Charge, the following Board of Medical Officers of the U. S. Public Health Service, has considered the appeal regarding subject-named alien May Gunborg Johnson and after taking into consideration the certificate of Mar. 11, 1948 and the testimony given by Dr. Carlton Simon, reports that it concurs with the above dated certificate."

[2] 39 Stat. 885, as amended, 8 U. S. C. § 152:

"Sec. 16. The physical and mental examination of all arriving aliens shall be made by medical officers of the United States Public Health Service who shall conduct all medical examinations and shall certify, for the information of the immigration officers and the boards of special inquiry hereinafter provided for, any and all physical and mental defects or diseases observed by said medical officers in any such alien; . . . . Any alien certified for insanity or mental defect may appeal to the board of medical officers of the United States Public Health Service, which shall be convened by the Surgeon General of the United States Public Health Service, and said alien may introduce before such board one expert medical witness at his own cost and expense. . . ."

42 C. F. R. § 34.13 (1947 Supp.). *"Re-examination; convening of boards; expert witnesses; reports.* (a) The Surgeon General, or

There is a suggestion that a medical appeal board must certify that the alien had been examined.[3] I assume, however, that if the Court intended to require specific certification by the medical board of the steps leading to its findings and conclusions it would have made such a holding definitive.

---

when authorized, a medical officer in charge, shall convene a board of medical officers to re-examine an alien

.            .            .            .            .

"(2) Upon an appeal by the alien from a certificate of insanity or mental defect, issued at a port of entry.

.            .            .            .            .

"(c) Re-examination shall include:
"(1) A medical examination by the board;
"(2) A review of all records submitted;
"(3) Use of any laboratory or diagnostic methods or tests deemed advisable; and
"(4) Consideration of statements regarding the alien's physical or mental condition made by a reputable physician after his examination of the alien.

.            .            .            .            .

"(g) The findings and conclusions of the board shall be based on its medical examination of the alien and on the evidence presented to it and made a part of the record of its proceedings.
"(h) The board shall report its findings and conclusions to the Immigration Service, and shall also give prompt notice thereof to the alien if the re-examination has been held upon his appeal. The board's report to the Immigration Service shall specifically affirm, modify, or reject the findings and conclusions of prior examining medical officers."
It will be noted that the evidence presented to the board was made a part of the report to the Board of Special Inquiry as required by the regulation.

[3] "It hardly seems necessary to add that the statement of the appellate board that it had 'considered the appeal,' cannot be treated as a certification that petitioner had been given an independent medical examination."

I disagree with the Court's interpretation of the report. A strong presumption exists that public officials perform their duty. If the report had added the phrase, "in accordance with the regulations," after the word "considered," there could be no doubt as to the sufficiency of the report. The presumption of regularity until rebutted requires courts to adopt such an interpretation.[4] The statement of the board of medical officers that it "has considered the appeal" means to me that the board has proceeded conformably to the statute and regulations.

(2) There is a graver error in the Court's holding, however, which may interfere with sound administrative procedure. Although petitioner was represented by counsel, no objection to the form of the report was made during the administrative process. This case heretofore has centered around the issue of finality disposed of by the Court. Even in the several hearings of her effort to get relief by habeas corpus, petitioner has never asserted, in this or any other court, that she was not examined by the physicians of the medical review board. This is made plain by the Court's statement of the generalized objections on other grounds to the report of the medical review board, see opinion at note 2, and from the affidavits and objections appearing in the record. The dissenting judge, 170 F. 2d 1009, 1013, did not refer to the failure to examine petitioner. He spoke only of the failure of the Board of Special Inquiry and the medical board to require adequate and revealing certificates and reports. Even the petition for certiorari does not present the question. The brief does not discuss it.

[4] *Lewis* v. *United States,* 279 U. S. 63, 73: "It is the settled general rule that all necessary prerequisites to the validity of official action are presumed to have been complied with, and that where the contrary is asserted it must be affirmatively shown."

*Stearns Co.* v. *United States,* 291 U. S. 54, 63, and authorities cited; *United States* v. *Chemical Foundation,* 272 U. S. 1, 14.

The administrative remedy must be exhausted by fair effort to correct administrative errors before resort to habeas corpus or other judicial remedies.[5]  To permit occasional reversal of administrative orders on points not brought to the attention of the agency hampers administrative routine and, if adopted as a rule of law, would disorganize administrative procedure.  Afterthought cannot take the place of required objection.  This is not a case where rules of practice and procedure defeat the ends of justice.[6]  There is nothing in this record to indicate that disabilities of petitioner, or difficulties of procedure or practice, the emergence of a new rule of law or any other change of circumstance has affected the course of petitioner's pleas.  She has had advantage of every method of relief known to the law but has not seen fit to bring forward the ground upon which this Court reverses.

It is obvious that had objection been made to the form of the report of the Board of Medical Officers at the hear-

---

[5] We refused to review an issue not raised before an administrative body in *Unemployment Commission* v. *Aragon,* 329 U. S. 143, 155: "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Tri-State Broadcasting Co.* v. *F. C. C.,* 107 F. 2d 956, 958. Cf. *Myers* v. *Bethlehem Corp.,* 303 U. S. 41, 51, note 9; *Blair* v. *Oesterlein Co.,* 275 U. S. 220.

The Administrative Procedure Act contemplates presentation before the administrative agency of every issue that may be made the subject of judicial review by habeas corpus or appellate process.  60 Stat. 237, §§ 7 (c), 8 (b) (2), 10 (b), (c) and (e).  The rule against raising questions on judicial review that were not raised in administrative proceedings has general application, see *Caldarone* v. *Zoning Board of Review,* 74 R. I. 196, 199, 60 A. 2d 158, 159; *Reisberg* v. *Board of Standards and Appeals,* 81 N. Y. S. 2d 511, 513; *General Transp. Co.* v. *United States,* 65 F. Supp. 981, 984.

[6] Cf. *Hormel* v. *Helvering,* 312 U. S. 552, 557.

820

ing before the Board of Special Inquiry, April 6, 1948, a prompt elaboration of the report could have been obtained or, if no examination such as is required by the regulations had already been made, it could have been done promptly. Proper administrative procedure requires that objection to certificates be made at the earliest opportunity which in this case was during the administrative hearing before the Board of Special Inquiry. A litigant's unexplained failure to raise an issue does not justify capricious judicial intervention on behalf of an individual.

I would affirm the judgment below.