**UNITED STATES of America, ex rel. Margarita Julia LEON, Petitioner-Appellant,**

v.

**John L. MURFF, District Director of Immigration and Naturalization, Respondent-Appellee.**

**No. 56, Docket 24436.**

United States Court of Appeals
Second Circuit.

Argued Nov. 13, 1957.

Decided Dec. 18, 1957.

---

Newman, Aronson & Neumann, New York City (Mannis Neumann, New York City, of counsel), for petitioner-appellant.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (Charles J. Hartenstine, Jr., Sp. Asst. U. S. Atty., New York City, of counsel), for respondent-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

LEIBELL, District Judge.

The history of the administrative proceeding to deport the petitioner-appellant, Mrs. Leon, is set forth in some detail in the opinion of Judge Levet, 143 F.Supp. 270. He dismissed the writ of habeas corpus which she sued out, after the Board of Immigration Appeals had had her case before it for a second time and had sustained the findings and conclusions of the Special Inquiry Officer and dismissed the appeal.

Mrs. Leon's trouble with the authorities started when she was held at Bellevue for about two weeks in January 1951 following an altercation in which she struck a man with a bottle and showed other signs of irrational conduct. From Bellevue she was transferred to Central Islip State Hospital on January 11, 1951, where she was a patient for five months.

Her early life is outlined in a Clinical Summary made at the Central Islip State Hospital on April 23, 1951. The diagnosis of April 23, 1951, was "Psychosis with Psychopathic Personality, Paranoid Trends."

A Special Inquiry Officer on June 3, 1954, after a hearing, held that Mrs. Leon was deportable as a "person of constitutional psychopathic inferiority." [Immigration Act of 1917, Sec. 3 and Sec. 19(a)*]. On appeal, the Immigration Board of Appeals on October 8, 1954, granted Mrs. Leon's application to have the proceeding before the Special Inquiry Officer reopened for a further medical examination of Mrs. Leon to determine whether at the last time of entry into the United States she was a person of "constitutional psychopathic inferiority."

* Now 8 U.S.C.A. §§ 1182, 1251.

On January 20, 1955, Mrs. Leon was examined by the United States Public Health Service. The certificate addressed to the District Director of the Immigration and Naturalization Service on January 21, 1955, describes her condition as observed at the examination, at which "there was no evidence of overt psychosis." But the "Impression" certificate was that the patient had a psychotic break in 1951 and that from her history and her condition in January 1955 "there appears to be no doubt that the patient was properly certified as suffering from constitutional psychopathic inferiority at the time of her entry into the United States about March 30th, 1950." That date is incorrect. It should have been May 10, 1948. But the difference in dates is unimportant because if she was a person of "constitutional psychopathic inferiority" on the one date she was the same on the other, since her condition was "constitutional."

■ Accordingly, the proceeding was reopened before the Special Inquiry Officer on November 9, 1955. He received, without objection, the report of the United States Public Health Service, dated January 21, 1955. Mrs. Leon's attorney submitted a certificate from a Dr. Allentuck, which in effect stated that she was a normal person. The Special Inquiry Officer concluded, in a report dated December 23, 1955, that Mrs. Leon was a person of constitutional psychopathic inferiority at the time she last entered the United States (at Miami, Florida, on May 10, 1948) as a returning resident in possession of a re-entry permit.[1]

■ Mrs. Leon again appealed to the Board of Immigration Appeals. Her appeal was dismissed in a decision dated April 26, 1956, in which the Board stated: "In the instant case, we have before us conflicting medical diagnoses on the issue of whether the alien was a person of constitutional psychopathic inferiority at the time of her last entry. Since the question arises in deportation, as distinguished from an exclusion proceeding (citing [United States ex rel.] Johnson v. Shaughnessy, 336 U.S. 806 [69 S.Ct. 921, 93 L.Ed. 1054]) the Board is required to evaluate all the evidence of record, including certificates of the Public Health Service and the evidence submitted by respondent, in determining whether the mental charge is sustained." The Board of Appeals concluded that "the medical proof submitted by the Immigration Service of past events and circumstances in respondent's life outweighs the evidence produced by respondent's counsel"; and that "the clinical report of respondent's 1950–1951 (mental) illness amply supports the Public Health Service certification that respondent was a person afflicted with constitutional psychopathic inferiority at the time of her last entry." Mrs. Leon was granted leave to depart voluntarily. She did not do so and a warrant of deportation was issued on May 2, 1956. She was taken into custody and then filed her petition for a writ of habeas corpus dated June 14, 1956.

Judge Levet carefully considered the evidence before the Special Inquiry Officer on both hearings, and concluded that there was sufficient evidence to support the conclusions of the Special Inquiry Officer; that the clinical diagnosis by the physician in the State Hospital at Central Islip was properly admitted in evidence; that it consisted of a certificate by the Supervising Psychiatrist of the Hospital made after a personal examination of the relator during her hospitalization there and included certain past history; that the relator had declined the opportunity to examine the psychiatrist of the Central Islip Hospital, if produced, in relation to these findings; and that there were three concurring certificates of doctors of the

---

1. His former report had incorrectly stated the date of her last entry as March 30, 1950. The 1950 entry was from Puerto Rico and as such was not properly an entry. Savoretti v. Voiler, 5 Cir., 214 F.2d 425.

United States Public Health Service made on separate occasions, two based on the findings of the supervising psychiatrist of the Central Islip Hospital and the last on the Hospital records and a personal examination of Mrs. Leon. A mental hygiene specialist (Dr. Luria), who testified for Mrs. Leon at the first hearing in the administrative proceeding, admitted that it was possible for the Public Health Service to make a diagnosis based upon a case history alone. Dr. Luria had read the clinical summary of the Central Islip Hospital before he testified. Mrs. Leon's attorney submitted at the second hearing in the administrative proceeding a report of Dr. Samuel Allentuck, who had examined Mrs. Leon over a period of about six sessions, supporting her contentions that she was not a person of "constitutional psychopathic inferiority." The language used in his report was that she "is not psychotic, not feebleminded, and not constitutionally psychopathic." Dr. Leon Luria who examined Mrs. Leon seven or eight times, in addition to testifying at the first hearing, certified on June 29, 1953, that she acted quite natural and that she had no peculiar ideas, that her train of thought was clear and her memory was good, and that she understood the situation she was in.

▮ On this appeal, petitioner argues that neither the Special Inquiry Officer nor the Immigration Board of Appeals had a proper definition of the words "constitutional psychopathic inferiority." That expression is used in Section 3 of the Immigration Act of 1917. It was judicially interpreted by this Court, United States ex rel. Powlowec v. Day, 2 Cir., 33 F.2d 267, 268 (certiorari denied 280 U.S. 594, 50 S.Ct. 40, 74 L.Ed. 641), Judge Learned Hand writing the opinion, as applying to persons "who by nature were subject to insanity of one sort or another; that is to say, whose constitution was such that

they had not normal mental stability." He referred to it as something "inherent in their nervous structure"; and added that the Court "must accept the opinion of those formally qualified"; and that "The whole subject is one of excessive uncertainty at best; whoever is fitted for the responsibility, it is certain that we are not; we must act upon what those tell us who carry the proper credentials." [2]

Section 59 of the United States Public Health Service Regulation, in effect in May 1948, provided:

"There shall be certified as cases of constitutional psychopathic inferiority all psychopathic characters such as chronic litigants, sexual perverts, pathological liars, dipsomaniacs, moral imbeciles, and mentally peculiar persons who because of eccentric behavior, defective judgment or abnormal impulses are in repeated conflict with social customs and constituted authorities."

The case of United States v. Flores-Rodriguez, 2 Cir., 237 F.2d 405, 410, mentions the expression "constitutional psychopathic inferiority" as used in the 1917 Act, while discussing Section 1182 (a) (4) of T. 8 U.S.C.A. which applies to "Aliens afflicted with psychopathic personality, epilepsy or a mental defect." The Flores-Rodriguez case held that a sex deviate, under certain circumstances, was a person of that type. [See also United States v. Schwarz, D.C. 1949, 82 F.Supp. 933.]

▮ There was no error committed by the Special Inquiry Officer when he received in evidence the records of the State mental hospital at Central Islip, L. I. Although Section 352 of the New York Civil Practice Act provides that a physician shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity and which was necessary to en-

2. The following cases were affirmed upon the authority of the Powlowec case. United States ex rel. Kreisberg v. Day, 2 Cir., 37 F.2d 1014; and United States ex rel. De Brito v. Corsi, 2 Cir., 72 F.2d 1022.

able him to act in that capacity, there are certain exceptions to the rule which covers hospital records as well. One exception is found in Section 23 of the New York Mental Hygiene Law, McKinney's Consol.Laws, c. 27. It is entitled "Deportation and removal of alien and non-resident mentally afflicted persons; powers and duties of the Commissioner" of mental hygiene. Subdivision (2) of Section 23 provides: "The commissioner or his representative shall notify the proper authorities having control of the enforcement of the immigration laws of such persons who are found to be deportable in accordance with the provisions of such laws." A mere notice of the immigration officials without a disclosure of the clinical facts showing the nature and extent of the mental ailment, would not enable that officer to form any judgment as to the deportability of the person.

The medical certificates of the United States Public Health Service were admissible, even though based on hospital records. Mrs. Leon has at all times been represented by an attorney. Her attorney was given an opportunity to examine the psychiatrists of the Central Islip Hospital who made the certificates but he declined to do so.

The petitioner-appellant has not been in any trouble with the law enforcement authorities since her release from the Central Islip Hospital in May 1951. She has been gainfully employed and has not been a public charge. Nevertheless she is deportable on the record in this case and under the provisions of the statute [§§ 3 and 19(a) of the Immigration Act of 1917 as preserved by § 405(a) of the Act of June 27, 1952. See footnote to § 1101 of T. 8 U.S.C.A.] which are applicable to her case. She is deportable to Cuba, her native country, from which she came to the United States. There is no great hardship in that. The petitioner-appellant had a fair hearing; there was substantial evidence to support the findings of the Special Inquiry Officer which were affirmed by the Board of Immigration Appeals; the District Court carefully considered all the legal points advanced by the petitioner and dismissed the writ of habeas corpus. The order of dismissal is affirmed.