MATTER OF CAYDAM

In Deportation Proceedings

A-12681937

*Decided by Board November 24, 1967*

Where the subject alien was certified by U.S. Public Health Service medical officers as afflicted with "Sexual Deviation—Class A" and the underlying medical-psychiatric "examination" and "certification", as well as the appellate procedure before the Board of Medical Examiners, failed to comply with substantive procedures and regulations set forth in the "Manual for Medical Examination of Aliens" and 42 CFR 34 (initial examination not by 2 medical officers, no evidence of independent medical examination by Board of Medical Examiers and refusal by the Board to accept into evidence psychiatric reports offered by the alien), such Class A certification is not binding on the special inquiry officer on the question of the alien's inadmissibility under section 212(a)(4) of the Immigration and Nationality Act, as a sex deviant, in conjunction with an application for adjustment of status under section 245 of the Act, and the case is remanded for a new and proper examination by U.S.P.H.S. medical authorities.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer.

ON BEHALF OF RESPONDENT: Sidney Bradpiece, Esquire
280 South Beverly Drive
Beverly Hills, California 90212

Respondent appeals from a decision of the special inquiry officer finding him deportable as charged and ineligible for any form of relief other than voluntary departure, which has been granted.

Respondent is a 23-year-old married male alien, native and citizen of Turkey, who was admitted to the United States as a nonimmigrant student on September 16, 1961. On February 19, 1965, he was married to Jacqueline Jean Ray, a native born citizen of the United States, and they have lived together since that time. Her petition for non-quota status for him was filed on March 3, 1965, together with his application for adjustment under section 245.

As part of the adjustment procedure, respondent presented himself

at the United States Public Health Service for examination in May, 1966. Thereafter, on a Form FS-398, a report relating to respondent was issued; it was signed by D. A. St. Claire, M.D., Chief of Medicine, dated May 27, 1966 and in the space left for notation of defect, disease or disability, the following is typed in:

"Per Dr. Conrad  class A—Sex deviant
      his statement attached".

Attached were two sheets of casually handwritten notes, in two different handwritings, bearing the signature of S. J. Conrad at two points. These two pages, together with reports of negative results on two diagnostic medical tests, were attached to a pink printed sheet, numbered PHS-4854, indicating that the attached material was an original report, with no copies being retained by the Public Health Service. These papers were received and stamped by the Immigration and Naturalization Service on May 31, 1966. Thereafter, on October 10, a Board of Medical Examiners, of the Public Health Service, was convened, and respondent, his counsel, and Dr. Edwin E. McNiel, a psychiatrist, appeared before it. By an undated communication, labelled "REPORT OF BOARD OF MEDICAL EXAMINERS", signed by the three doctors who had composed the board and mailed to the Immigration and Naturalization Service under date of October 18, 1966, the United States Public Health Service affirmed its earlier holding that respondent was afflicted with "Sexual Deviation—Class A."

On November 7, 1966, the District Director of the Immigration and Naturalization Service, referring to the proceedings before the Public Health Service and the results thereof, advised respondent that his application for adjustment to permanent resident status was denied, for the reason that he was ineligible to receive a visa and excludable from admission under section 212(a)(4) as an alien afflicted with sexual deviation. Respondent was given 15 days from the date of the letter in which to depart voluntarily from the United States.

Respondent remained in the United States beyond November 22, 1966 and on February 23, 1967 an order to show cause was issued, charging him with being deportable for overstay. Hearings in the deportation proceedings were held on March 6 and March 23, 1967. Respondent admitted the factual allegations contained in the order to show cause, but did not concede deportability, and renewed his application for adjustment under section 245. The special inquiry officer, in his oral decision rendered at the close of the second hearing, recited that respondent had been examined by a medical officer of the United States Public Health Service, with a resulting Class A Medical Cer-

tificate as a sex deviant; that on appeal the Board of Medical Examiners of the United States Public Health Service had affirmed the Class A Medical Certificate; that the special inquiry officer, in cases involving admission or adjustment was bound by the decision of the Board of Medical Examiners and must base his findings upon their certification (section 236(d), Immigration and Nationality Act) *where there had been compliance with the appropriate requirements* (emphasis supplied) (citing *U.S. ex rel. Johnson* v. *Shaughnessy*, 336 U.S. 806); that inasmuch as it appeared there was such compliance in respondent's case, the United States Public Health Service certificate must be conclusive, and respondent must be found inadmissible under section 212(a)(4). Since it followed that respondent must, therefore, be ineligible for adjustment, the special inquiry officer granted voluntary departure as the only relief available, with an alternate order of deportation to Turkey if respondent should fail to depart when and as required.

In the situation we have before us, where the decision of the Public Health Service when made is so binding that there is no appeal from a denial of adjustment or admission based upon that decision, and where not only the alien, but an American citizen wife is affected, the procedure promulgated by the Surgeon General of the United States cannot be overlooked, or abridged for the sake of convenience. From an examination of the record, we are not satisfied that either the initial "sex deviant" classification, or its affirmance by the medical board, was made in compliance with the regulations governing such functions, or with the procedures prescribed by the Public Health Service itself for the medical examination of aliens. Respondent, on appeal, attacks not only the procedures used by the Public Health Service, but the type and sufficiency of evidence relied on in reaching its conclusion. Mindful of the Congressional intent that the medical judgment of Public Health Service officers in these situations is to be conclusive, we address ourselves only to the propriety and sufficiency of the procedures used by them in reaching their conclusion.

First, it is prescribed that a certification as to a Class A condition must be issued on a specific form, PHS-124 (FQ), (*Manual for Medical Examination of Aliens*, Public Health Service, 1963, hereinafter referred to as *Manual*, pp. 4-1, par. 1), and the original of that form is to be turned over to the Immigration and Naturalization Service (*Manual*, pp. 2-12, par. 2.(3)). No such form is in the file, nor was it apparently ever filled out. While on its face, this failure to comply with the rules would appear to be trivial, in actuality it resulted, from the outset, in the denial of substantive right to respondent, for the Class A Certificate (with exceptions not applicable here):

"shall be signed by *at least two* medical officers who have examined the alien. * * *" (*Manual*, pp. 4–2, par. 3.b.) (Emphasis supplied.)

Respondent was seen by only one medical officer, and from the notes appended by that medical officer to the report sent to the Immigration and Naturalization Service, it cannot be ascertained whether he actually gave respondent a medical-psychiatric examination. Those notes bear little resemblance to reports of psychiatric examinations we have had before us in the past. Further, they do not contain the information that the *Manual* specifies as necessary in records of examination: (pp. 2–19, par. 54)

"Examiners shall maintain records of all examinations. When mental conditions are certified, the record shall contain a statement of the personal and antecedent history of the individual as far as obtainable, a description of any physical abnormalities detected, and a detailed description of the mental signs and symptoms * * *"

As to the Board of Medical Examiners which was convened, counsel points out that the doctor who made the initial finding of sexual deviation was not only a member of that board, but that he acted as Chairman as well. His is the first signature on the board's report, and he apparently made the only record of its proceedings (see handwritten notes above referred to, part of Ex. 3, and entry after date 10/10/66). That his presence on the board is recognized by the Public Health Service as an undesirable practice is shown by the following instruction in the *Manual* (pp. 2–15, par. 44.d.):

"All practical effort shall be made to avoid having a medical board include in its membership an individual who has previously rendered a decision in the same case."

It is difficult to believe that another qualified medical officer was not available, in an area where medical boards may be convened whenever required (*Manual*, pp. 2–14, par. 44a.(1)), and where, therefore, sufficient facilities and personnel for them are presumably on hand at all times.

As for the procedure to be followed by the medical board, Title 42 CFR, section 34.14, in defining the scope of reexamination by the board, states:

"(c) Reexamination shall include:
(1) A medical examination by the board. If the mental condition of the alien is in question and the board does not include at least one officer who has had special training in the diagnosis of mental defects, diseases and disabilities, the board shall designate a physician with such training who shall *also* examine the alien, and his report shall be included in the record." (Emphasis supplied.)

That this medical examination was intended to be something more than a mere scrutiny of the alien while testimony was being given be-

fore the board is made even clearer by a provision of the *Manual* which states:

"* * * The alien's counsel shall not be permitted to be present during the board's independent medical examination * * *." (pp. 2-16, par. 46, last sentence.)

Although the board's report implies that it did make a medical examination of respondent (see par. 3 of the Report), counsel, who was present with the respondent throughout the proceedings, insists there was no examination of the type required by the regulations. (See respondent's Brief, p. 10.) The file contains no record of an examination, in accordance with the requirements set forth in the *Manual* (pp. 2-19, par. 54); there is no statement in the medical board's report as to when and where the board examined the respondent (as required by par. 47, pp. 2-16, *Manual*); and the only record of the proceedings, the handwritten notes referred to above, makes just the following reference to respondent's participation on October 10, 1966:

"Pt. comes in with atty Sidney Bradpiece. Dr. Edwin E. McNeil. They deny the police report . . .", etc.

From the above mentioned material, and counsel's statements, it does not appear that respondent was afforded the independent medical reexamination which is one of the basic reasons for the convening of the board.

Counsel claims further error and unfairness in the board's proceedings. He states that reports of a psychiatrist and psychologist who examined the respondent and concluded that he was not a sexual deviant were offered in evidence but were refused by the board and returned to counsel. (Copies of these reports are in this record as Exhibit 4.) One of them was a report made by the psychiatrist who appeared before the board on respondent's behalf. Title 42 CFR, section 34.14(e) provides that witnesses before the board shall be given a reasonable opportunity to present all relevant and material evidence, orally or in writing, and section 34.14(g) provides that the findings of the board are to be based on its medical examination of the alien and *on the evidence presented and made a part of the record of its proceedings.* That the claimed material was presented is confirmed by the October 10, 1966 entry in the handwritten record of the proceedings referred to above.

Both 42 CFR 34 and the *Manual* require that the board's report give both findings and conclusions. The *Manual*, at pages 2-16, paragraph 47, gives in detail the material that the report should contain, followed by a specimen report. The report in this file contains virtually none of the specified information; it does not show when and where the respondent was medically examined; it does not indicate

the nature of all records submitted, or identify the witnesses heard, or give the nature of the testimony and evidence; it does not give the facts on which its finding is based. It merely lists, in vague terms, the records it reviewed, and then states that on the basis of that evidence and of its medical examination of respondent, it concludes that he has: Sexual Deviation—Class A, and the earlier medical certificate is affirmed.

It is apparent that the regulations and *Manual* procedures were given only token recognition, or honored in the breach, and that respondent did not receive the type of hearing and examination contemplated. The medical board's finding of the existence of a Class A condition was not based on its own independent medical-psychiatric examination, for it did not make one. It did not carefully consider all of the evidence presented, because it refused to accept and make a part of the record the reports of a psychiatrist and psychologist who had examined and tested respondent, which reports were offered by respondent as evidence of his normality. There is no way of knowing why it reached the decision it did, because its report contains absolutely no findings.

In a situation in which the sufficiency of a Public Health Service Class A finding was attacked in the courts, in *U.S. ex rel. Johnson* v. *Shaughnessy*, *supra*, the Supreme Court held that a certificate of a Class A condition, made by a medical board of review without full compliance with the applicable regulations and procedures, which denied the alien the independent review and reexamination which Congress and the Surgeon General had prescribed, was not binding on the question of medical admissibility, and remanded the case with the order that the petitioner be afforded a proper hearing and medical examination before the appropriate public health authorities.

Here, not only the appellate procedure before the medical board, but the underlying "examination" and "certification" failed to comply with the prescribed steps and standards. We hold that because of these serious omissions and failure to comply with the regulations and procedures, the Class A finding in this case is invalid and is not binding in these proceedings. Therefore, the conclusion of the special inquiry officer that respondent must be found inadmissible and ineligible for adjustment on the basis thereof, will not be affirmed. However, as neither the special inquiry officer nor this Board has the expertise or the authority to make a determination on respondent's medical admissibility or inadmissibility in these proceedings, we will remand this case with the direction that respondent be afforded the opportunity for a new and proper medical examination, conducted in accordance with the standards set forth therefor by the Surgeon General of the

United States; and that upon receipt of the results of such examination, the special inquiry officer shall make a new determination on respondent's eligibility and application for adjustment of status, and any or all such other findings and orders as may be proper and necessary at that time.

**ORDER:** It is ordered that this matter be and the same is hereby remanded for the purposes set forth above.

*It is further ordered* that the decision of the special inquiry officer, made after the above proceedings, shall be certified to this Board for final review.