## MATTER OF HILL

### In Exclusion Proceedings

### A-24204969

*Decided by Board July 9, 1981*

An applicant for admission can be excluded from the United States as a homosexual under section 212(a)(4) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(4), absent a United States Public Health Service Class "A" Certification where he has made an unsolicited, unambiguous admission that he is a homosexual and where the current United States Public Health Service position that homosexuality cannot be medically diagnosed is a matter of record.

EXCLUDADLE:
Order: Act of 1952—Sec. 212(a)(4) [8 U.S.C. 1182(a)(4)]—Psychopathic personality, sexual deviation or mental defect.

ON BEHALF OF APPLICANT:
Jeff T. Appleman, Esquire
Berry & Appleman
850 Montgomery Street, Third Floor
San Francisco, California 94133

ON BEHALF OF SERVICE:
Brian H. Simpson
Trial Attorney

Gerald S. Hurwitz
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Maguire, Board Members

The Immigration and Naturalization Service appeals from the November 7, 1980, decision of an immigration judge ordering the applicant admitted to the United States as a nonimmigrant visitor. The appeal will be sustained.

The applicant is a 34-year-old native and citizen of England. On November 5, 1980, he sought entry into the United States as a nonimmigrant visitor for pleasure. On arrival at the airport in San Francisco, he made an unsolicited statement to the immigration inspector that he was a homosexual. The Service then issued a "Notice To Applicant For Admission Detained For Hearing Before Immigration Judge" (Form I-122) advising the applicant that he appeared to be excludable from the United States under the provisions of section 212(a)(4) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(4), as "an alien afflicted with a psychopathic personality, sexual deviation or mental defect."

At his exclusion hearing on November 7, 1980, the applicant acknowledged that he had made an unsolicited statement to the immigration

inspector that he was a homosexual. He stated that he did so as a matter of principle because he did not think that he should be excluded from the United States for that reason. The applicant was asked by his counsel at the exclusion hearing: "Are you in fact a homosexual?" He answered: "Yes, I am." The applicant further acknowledged that at a prior attempted entry into the United States on June 13, 1979, he had made a sworn statement in which he stated that he was a "practicing homosexual" and that his male friend who was with him at the time the sworn statement was made was his "lover."

·After the immigration judge ascertained that the applicant had not been referred to the United States Public Health Service for a physical and mental examination and that no certification had been issued that he was within the class of aliens excluded from admission to the United States under section 212(a)(4), the remainder of the exclusion hearing involved the parties' arguments as to whether the applicant could be excluded absent such a certification. The immigration judge ultimately concluded that even though the applicant had repeatedly admitted his homosexuality, he could not be found excludable from the United States as a homosexual under section 212(a)(4) absent a Class "A" Certification issued by the Public Health Service (PHS). The Service appeals from this decision.

Under section 212(a)(4) of the Act, aliens "afflicted with psychopathic personality, or sexual deviation, or a mental defect" are excluded from admission into the United States. In 1967, the United States Supreme Court found that the "legislative history of the Act indicate[d] beyond a shadow of a doubt that the Congress intended the phrase 'psychopathic personality' to include homosexuals. . . ." *Boutilier* v. *INS*, 387 U.S. 118, 120 (1967). The Court concluded "that the Congress used the phrase 'psychopathic personality' not in the clinical sense, but to effectuate its purpose to exclude from entry all homosexuals and other sex perverts." *Id.* at 122. Thus, the issue now before the Board is not whether homosexuals are within the scope of section 212(a)(4). They clearly are. This fact is not contested by the applicant. Instead, the issue before us involves the interpretation of sections 234, 235, and 236 of the Act, 8 U.S.C. 1224, 1225, and 1226.

Section 234 of the Act provides in relevant part:

The physical and mental examination of arriving aliens . . . shall be made by medical officers of the United States Public Health Service, who shall conduct all medical examinations and shall certify, for the information of the immigration officers and the special inquiry officers, any physical and mental defect or disease observed by such medical officers in any such alien. . . . Aliens . . . arriving at ports of the United States shall be examined by at least one such medical officer or civil surgeon under such administrative regulations as the Attorney General may prescribe, and under medical regulations prepared by the Surgeon General of the United States Public Health Service. Medical officers of the United States Public Health Service who have had special

training in the diagnosis of insanity and mental defects shall be detailed for duty or employed at such ports of entry as the Attorney General may designate, and such medical officers shall be provided with suitable facilities for the detention and examination of all arriving aliens who it is suspected may be excludable under paragraphs (1), (2), (3), (4), or (5) of section 212(a), and the services of interpreters shall be provided for such examination. Any alien certified under paragraphs (1), (2), (3), (4), or (5) of section 212(a) may appeal to a board of medical officers of the United States Public Health Service, which shall be convened by the Surgeon General of the United States Public Health Service, and any such alien may introduce before such board one expert medical witness at his own cost and expense.

Section 235(a) of the Act provides in part that the "inspection, other than the physical and mental examination, of aliens . . . seeking admission or readmission to . . . the United States shall be conducted by immigration officers, except as otherwise provided in regard to special inquiry officers." Section 235(b) states that every alien (other than certain categories of aliens not relevant here), who does not appear to the examining immigration officer to be clearly and beyond a doubt entitled to land, shall be detained for further inquiry to be conducted by an immigration judge.

Section 236(a) of the Act in part provides that an immigration judge shall conduct proceedings to determine whether an arriving alien detained for further inquiry under section 235 shall be allowed to enter or shall be excluded or deported. Section 236(d) directs that if an alien is afflicted with any mental disease, defect, or disability which would bring him within any of the classes excluded from admission to the United States under paragraphs (1), (2), (3), (4), or (5) of section 212(a), the decision of the immigration judge must be based solely upon such certification. It further provides that an alien shall have no right to appeal from such an excluding decision.

Applicant's counsel submits that prior to August 2, 1979, it was the policy of the Service and State Department consular offices to refer aliens suspected of being homosexual to PHS medical officers for medical examinations to determine if they were "afflicted with a psychopathic personality, sexual deviation, or medical defect."[1] On August 2, 1979, however, the PHS revised its policy regarding the physical and mental examination of aliens pursuant to section 234 and stated that it no longer considered homosexuality per se to be a "mental disease or defect." See attachment "B" to Exhibit 2. It was indicated that the revision was made for two reasons: First, it was stated that the change

---

[1] In a December 10, 1979, memorandum for the Acting Commissioner of the Service from the Assistant Attorney General, Office of Legal Counsel, Department of Justice, it is stated that since 1952, "the exclusion of homosexual aliens has been enforced both unilaterally by the INS, e.g., relying on an alien's admission of homosexuality, and jointly, subsequent to a certification by the PHS that particular aliens are afflicted with a 'mental defect or disease.' " See attachment A to Exhibit 2.

reflected current and generally accepted cannons of medical practice with respect to homosexuality.[2] Secondly, it was indicated that the determination of homosexuality could not be made through medical diagnostic procedures. Effective August 2, 1979, PHS medical officers no longer would certify that homosexuality per se was a mental disease or defect. The Surgeon General requested that the Immigration Service not refer aliens suspected only of being homosexual to the PHS for certification under section 234.

The Immigration Service's ultimate reaction to the PHS policy change was to issue "Guidelines and Procedures for the Inspection of Aliens who are Suspected of being Homosexual" in its Operations Instructions. The new Service policy provides that no arriving alien will be asked any questions concerning his or her sexual preference during the primary inspection. An alien will be referred to secondary inspection for examination as to homosexuality only if the alien makes an "unsolicited, unambiguous oral or written admission of homosexuality . . ." or if a third party "*also undergoing inspection* voluntarily states without prompting or prior" questioning that an alien who arrived at the same time and who is then being processed is a homosexual. The Service policy notes that "the likelihood of a third party stating that an alien is homosexual is remote." In those situations involving third parties, the Service policy provides that the alien referred to secondary inspection is to be asked only whether he or she is homosexual. If the answer is no, the alien is not to be detained for further examination as to homosexuality. If an alien admits his or her homosexuality at the secondary inspection, only then will he or she be referred to an immigration judge for an exclusion proceeding.

. As it is understood that the likelihood of third party involvement at the point of inspection is "remote," the practical effect of the Service policy in large part is that no attempt will be made to exclude homosexuals from the United States under the provisions of 212(a)(4) unless they choose to make an unsolicited, unambiguous oral or written admission of homosexuality at the time of their arrival. On November 5, 1980, the applicant made such an admission as a matter of principle.

As noted, the issue in this case is not whether homosexuals are excludable under section 212(a)(4). Rather, the issue is whether a self-admitted homosexual can be excluded in the absence of a Class "A" Certification from the Public Health Service. We find that he can be excluded under the circumstances before us. First, this case is distinguishable from the earlier published and unpublished Board decisions cited by applicant's

---

[2] The medical or "clinical" view of homosexuality, however, is not controlling for immigration purposes. What Congress intended to be included with the scope of section 212(a)(4) governs unless Congress elects to modify that provision.

84

counsel and the immigration judge. The applicant herein has not merely admitted to previous homosexual acts or experiences. He has repeatedly admitted that he is "in fact a homosexual." The applicant at the proceedings below did not place this fact in question. In fact, his entire purpose in coming forward and declaring his homosexuality at the primary inspection point was his belief that he should not be excluded because he is a homosexual. Secondly, this is not an instance where the Public Health Service was either ignored or where Public Health Service procedures were improperly followed. The Public Health Service position is a matter of record. The Public Health Service has in essence issued a blanket decision "that the determination of homosexuality is not made through a medical diagnostic procedure" and that Class "A" Certifications will not be issued in any such cases.

Under these circumstances, does the Immigration Act preclude the exclusion of the applicant? Section 234 of the Act sets forth the requirement for the physical and mental examination of arriving aliens. It does not set forth the effect of the determinations upon the admission of such aliens. Section 235(b) directs that every alien (other than designated categories not relevant here) who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer. Section 235(b) does not state that a PHS certification is a prerequisite to referral for further inquiry. Section 236 is the provision that deals with the actual exclusion proceedings. Section 236(d) provides that where a medical officer has certified under section 234 that an alien is afflicted with a mental disease, defect or disability which would bring him or her within the provision of section 212(a)(4), the decision of the immigration judge must be based on such certification. *See United States ex rel. Wulf v. Esperdy*, 277 F.2d 537 (2 Cir. 1960). Section 236(d) does not, however, state the converse (*i.e.*, where no certification is issued that the immigration judge's decision must be based solely on that fact). *Compare United States ex rel. Johnson v. Shaughnessy*, 336 U.S. 806 (1949) (involving sections 3 and 17 of the Immigration Act of 1917).[3] The final pertinent provision of the Act with regard to this case is section 291 which in part provides that: "[w]henever any person . . . makes application for admission, . . . the burden of proof shall be upon such person to establish that he . . . is not subject to exclusion under any provision of this Act. . . ."

Here, where the applicant in exclusion proceedings bears the burden of proving his admissibility, where he has made an unsolicited, unambiguous statement that he is a homosexual, where it has been held that section 212(a)(4) of the Act includes within its scope homosexuals, where

---

[3] Section 17 of the Act of 1917 provided that: "[t]he decision of a board of special inquiry shall be based upon the certificate of the examining medical officer. . . ."

the Public Health Service has stated that the determination of homosexuality is not made through a medical diagnostic procedure, and where there is no express language in the Immigration Act that the exclusion of an alien under section 212(a)(4) can only be ordered where there is a PHS Class "A" Certification, we find that the applicant has failed to meet his burden of establishing that he is admissible to the United States. Accordingly, the decision of the immigration judge will be reversed and the applicant will be ordered excluded under section 212(a)(4).

ORDER: The appeal is sustained, and the applicant is ordered excluded and deported from the United States.

Board Member James P. Morris has abstained from consideration of this case.